IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 24-35874 |
| | § | |
| JUMPSTAR ENTERPRISES LLC, | § | Chapter 11 |
| | § | |
| DEBTOR. | § | |
| | § | Subchapter V |

**DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
UNDER SUBCHAPTER V**
[Relates to ECF. Nos. 81 and 89]

JumpStar Enterprises LLC d/b/a JumpStar Logistics, the debtor-in-possession in the above-captioned bankruptcy case, proposes this *Second Amended Plan of Reorganization under Subchapter V.*

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | Definitions | 1 |
| II. | Background/Financial Information | 3 |
| III. | Summary of Plan | 8 |
| IV. | Treatment of Administrative Expense Claims and Priority Tax Claims | 9 |
| V. | Classification and Treatment of Claims and Interests | 12 |
| VI. | Allowance and Disallowance of Claims | 16 |
| VII. | Treatment of Executory Contracts and Unexpired Leases | 16 |
| VIII. | Means for Implementation of the Plan | 16 |
| IX. | Effect of Confirmation and Releases | 17 |
| X. | Discharge | 17 |
| XI. | Reservation of Rights | 17 |
| XII. | Default | 18 |
| XIII. | General Provisions | 18 |
| XIV. | Notices | 20 |

## I.    <u>DEFINITIONS</u>

The following terms, when used in the Plan, shall, unless the context otherwise requires, have the following meanings, respectively:

1.      "Administrative Expense Claim" shall mean a Claim that is allowed pursuant to section 503 of the Bankruptcy Code.

2.      "Allowed Claim" shall mean, any Claim (a) that has been listed by the Debtor in its Schedule D or Schedule E/F as liquidated in amount and not "disputed" or "contingent" and that has not been supplanted by a proof of claim filed by the scheduled Creditor in the Chapter 11 Case, (b) that is established by a timely filed proof of claim in the Chapter 11 Case to which no objection or request for estimation has been filed on or before the Effective Date, or (c) that has been allowed by a final order of the Court.

3.      "Allowed _____ Claim" shall mean an Allowed Claim of the type described.

4.      "Bankruptcy Code" or the "Code" shall mean the United States Bankruptcy Code.

5.      "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure.

6.      "Chapter 11 Case" shall mean the captioned case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the Court and being administered under Case No. 35874.

7.      "C.H. Brown" shall mean C.H. Brown Co., LLC.

8.      "Claim" shall mean any claim (as that term is defined in 11 U.S.C. § 101(5)) against the Debtor.

9.      "Claims Bar Date" shall mean the deadline for filing Claims against the Debtor in the Chapter 11 Case, which was February 24, 2025 for non-governmental claimants, and is June 16, 2025 for governmental claimants.

10.      "Class" shall mean any class into which Claims are classified in this Plan.

11.      "Confirmation" shall mean the Court's entry of an order confirming the Plan.

12.      "Court" shall mean the United States Bankruptcy Court for the Southern District of Texas, Houston Division, presiding over the captioned bankruptcy case.

13.      "Creditor" shall have the same meaning as its given by 11 U.S.C. § 101(10).

14.      "Debtor" or "JumpStar" shall mean JumpStar Enterprises LLC d/b/a JumpStar Logistics.

15. "Disputed Claim" shall mean a Claim, or any portion thereof: (a) which is listed in the Schedules as disputed, contingent or unliquidated; or (b) as to which (i) a Proof of Claim has been filed, (ii) an objection, or request for estimation, has been timely filed (and not withdrawn) by an party-in-interest, and (iii) no final order has been entered thereon.

16. "Effective Date" shall mean the fourteenth day following the date of Confirmation.

17. "Equify Financial" shall mean Equify Financial, LLC.

18. "Kubota" shall mean Kubota Credit Corporation.

19. "Petition Date" shall mean December 16, 2024, the date JumpStar filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and made a Subchapter V election.

20. "Plan" shall mean this *Second Amended Plan of Reorganization Under Subchapter V* in its present form or as it may be amended, altered, varied, or modified from time to time.[1]

21. "Priority Claim" shall mean a Claim entitled to priority under 11 U.S.C. § 507(a)(3)-(8).

22. "Reorganized Debtor" shall mean the Debtor, as reorganized pursuant to this Plan.

23. "Roswurm Litigation" shall mean the case titled *Kenny Roswurm and Karen McDonald v. AGH Machine, Inc., JumpStar Enterprises LLC, and Guillermo Alanis,* 165th Judicial District Court, Harris County, Texas, Cause No. 2021-63685.

24. "SBA" shall mean the United States Small Business Administration.

25. "Secured Claim" shall mean the Claim of any Creditor secured by a lien or liens on property of a Debtor, which lien and/or liens are valid, perfected, and enforceable under applicable law, and are not subject to avoidance under the Code or other applicable non-bankruptcy law, and are duly established in this case, to the extent of the value of the security, as determined in accordance with 11 U.S.C. § 506.

26. "Subchapter V Trustee" shall mean Drew McNanigle, the appoint Subchapter V trustee in the Chapter 11 Case.

27. "Unsecured Claim" shall mean a claim that is not an Administrative Claim, a Priority Claim, or a Secured Claim.

---

[1] A redline comparison from the initial Plan [ECF No. 81], and all of its exhibits, and this Plan is filed hereto as **Exhibit D**.

## II.    DEBTOR BACKGROUND/FINANCIAL INFORMATION

### 2.1    Legal Structure and Ownership

JumpStar is a Texas limited liability company organized in 2014.  JumpStar is wholly owned by its sole member, Kathleen Tyson.  JumpStar is a "small business debtor" as the term is defined under Section 101(51D) of the Bankruptcy Code.

### 2.2    History and Nature of Debtor's Business

JumpStar is a trucking and logistics company formed in 2014, operating in Houston, Texas, and offering TL, LTL, drayage, flatbed, warehousing, and storage services.  JumpStar is managed by Brian Tyson, who oversees JumpStar's day-to-day operational and financial affairs.

JumpStar owns approximately 10 operating trucks, and another 20 non-operational trucks, which require mechanical work.  JumpStar employs 1099 contractors to serve as truck drivers, driver helpers,[2] and mechanics.

### 2.3    Events Leading to the Chapter 11 Cases

Over the years, JumpStar, through financing arrangements with various parties, acquired necessary equipment to operate its business.  Due to the COVID-19 pandemic, JumpStar's revenues decreased dramatically.  To ensure JumpStar could remain operational and continue serving its customers, JumpStar obtained a $500,000.00 Economic Injury Disaster Loan ("EID Loan") from the SBA in March 2022.  The EID Loan requires monthly payments from JumpStar equaling $2,575.00 and has a current balance equaling approximately $545,000.00.  The EID Loan is secured by a lien on all JumpStar's tangible and intangible personal property.

Prior to this Chapter 11 Case, JumpStar was also dealing with several creditors whose claims it could not timely pay, including, but not limited to, the Harris County Toll Road Authority, who sent a pre-petition citation for unpaid tolls against JumpStar in the amount of $339,592.51.

In addition, JumpStar was facing contingent and unliquidated liabilities arising from at least two state court cases.  In fact, this Chapter 11 Case was filed on an emergency basis due to a pending trial in the Roswurm Litigation, which was scheduled to commence on December 16, 2024 (the Petition Date).  JumpStar had previously retained counsel in the Roswurm Litigation, but its counsel filed a *Motion to Withdraw as Counsel,* citing lack of payment—and that motion was ultimately granted by the state court judge on November 25, 2024.

Without counsel, and facing an imminent trial and potential adverse judgment in the Roswurm Litigation, and with other financial issues mounting, JumpStar's management concluded

---

[2] Frequently, "driver helpers" assist the driver in delivering and moving heavy pallets on and off the truck, such as tiles or other similarly heavy pallets.

that seeking bankruptcy relief, in particular a Chapter 11 reorganization under Subchapter V of the Bankruptcy Code, presented JumpStar's best option to stabilize and reorganize its affairs, and was in the best interest of its creditors.

## 2.4    Filing of the Chapter 11 Case

On December 16, 2024, JumpStar filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and made a Subchapter V election. The Chapter 11 Case is currently pending in the Court. JumpStar's Schedules of Assets and Liabilities, and the amendments thereto, are available at ECF Nos. 41-46, 65, and 80 (the "Schedules"), and JumpStar's Statement of Financial Affairs, and the amendments thereto, are available at ECF Nos. 47, 64 and 70 (the "SOFAs").

## 2.5    Significant Events During the Chapter 11 Case

### A.    *General Procedural Background / Relevant Pleadings*

Upon commencing this Chapter 11 Case, the Debtor filed "first-day" motions seeking approval for the Debtor's maintenance of its pre-petition bank accounts and continued use of its existing cash management system [ECF No. 14], and the Debtor's use of cash collateral [ECF No. 12]. In addition to the "first-day" motions, the Debtor also filed a motion to extend the Debtor's deadline for filing its Schedules and SOFAs [ECF No. 10], which motion was granted by the Court on December 19, 2025 [ECF No. 11]. On December 17, 2025, Drew McNanigle was appointed as the Subchapter V trustee in the Chapter 11 Case.

On December 23, 2025, the Court granted the Debtor's *Motion to Use Cash Collateral* on an interim basis [ECF No. 32]. The Court granted the Debtor's *Motion to Use Cash Collateral* on a final basis on January 15, 2025 [ECF No. 51], authorizing the Debtor use the cash collateral under the terms and conditions set forth in the final order. In particular, the parties asserting an interest in the cash collateral — Maxim, Triumph and the SBA — were granted adequate protection, including cash payments in accordance with each party's respective loan agreement. During this Chapter 11 Case, the Debtor has paid off the claims of Maxim and Triumph.

On January 3, 2025, the Court entered the *Stipulation and Agreed Order Regarding Compliance with Section 345 of the Bankruptcy Code* ("Stipulation and Agreed Order"), submitted by the Debtor and the United States Trustee [ECF No. 37], authorizing the Debtor to, among other things, maintain its existing bank accounts and continue using its existing cash management system as provided under the terms and conditions of the Stipulation and Agreed Order.

The *Nunc Pro Tunc Application to Employ Kean Miller LLP as Counsel for the Debtor-in-Possession* [ECF No. 63] was filed on January 27, 2025, and approved by the Court on March 12, 2025 (Amended Order, ECF No. 78].

The Debtor has been actively seeking to develop a consensual restructuring plan with its creditors. To that end, among other things, on February 11, 2025, the Debtor filed and served upon all interested parties a Status Report [ECF No. 66], providing an overview of its plan proposal, including a detailed summary of the proposed treatment of its creditors under a future plan. A

status conference was held on February 12, 2025, during which the status report and plan proposals were discussed with the Court.

The Debtor previously filed an initial Plan [ECF No. 81] on March 17, 2025.  After filing the initial Plan, Debtor's counsel received informal comments from: (i) the U.S. Trustee; (ii) counsel for the Priority Tax Claims; (iii) counsel for various general unsecured creditors; and (iv) the Subchapter V Trustee.   On April 11, 2025, the Debtor filed a First Amended Plan [ECF No. 89], which incorporated proposed language from these parties and sought to address their concerns.[3]   The First Amended Plan [ECF No. 89] also sought to address the newly-filed Adversary Proceeding (as defined and more specifically addressed below).

The Court held an initial hearing on the confirmation of the Plan on April 30, 2025, and entered its *Order Continuing Plan Confirmation Hearing* (the "Continuance Order") [ECF No. 100].

This Plan seeks to address the Court's concerns, as communicated on the record and as set forth in its Continuance Order (ECF No. 100).  Moreover, per the Continuance Order, a hearing on this Plan's confirmation has been reset to **9:30 a.m. CT on June 12, 2025**.[4]  Objections to confirmation of the Plan shall be filed not later than **June 5, 2025**.

### B.      *Eber Aguilera's Claim and Adversary Proceeding*

On February 4, 2025, nearly two months after the Petition Date, Moore & Associates, through Melissa Moore ("Moore") and Curt Hesse ("Hesse"), initiated suit on behalf of Eber J. Aguilera ("Aguilera"), and Acee Valladares ("Valladares") (Aguilera and Valladares collectively, the "Plaintiffs"), against "Jumpstar Trucking Inc. d/b/a Jumpstar Logistics" by filing Plaintiffs' Original Petition (the "State Court Petition")  in the 80th Judicial District of Harris County Cause No. 2025-07566 (the "State Court Case").

In their State Court Petition, the Plaintiffs allege, among other things, that Aguilera was hired as a mechanic at "Jumpstar Trucking Inc. d/b/a Jumpstar Logistics" where he was injured on the job (the "State Court Claims"); as a result, he and his spouse, Valladares, are entitled to judgment and money damages against Jumpstar Logistics.[5]  Aguilera, however, was never an employee of Jumpstar Trucking Inc.  Rather, Aguilera was hired by the Debtor, and he remained on the Debtor's payroll right up until the Petition Date.

Although the State Court Petition appeared to misname the Debtor, the original State Court Petition contained the following "Misnomer/Alter Ego" clause:

---

[3] *See* Section 4.2 for treatment of Priority Tax Claims.

[4] **Please note that this is an out of division setting**.  Parties may appear virtually or in person in the Laredo Division, Courtroom 2A, 1300 Victoria St, Laredo, TX 78040. **Virtual attendance is recommended**.  Please visit the Court's website for instructions on how to attend virtually, *available at* https://www.txs.uscourts.gov/page/united-states-bankruptcy-judge-jeffrey-p-norman.

[5] State Court Petition, at ¶¶ 7.3, 7.7, 13.2.

In the event that any parties are misnamed or are not included herein, it is Plaintiffs' contention that such was a "misidentification", "misnomer" and/or such parties are/were "alter egos" of parties named herein. Alternatively, Plaintiffs contend that such "corporate veils" should be pierced to hold such parties' property included in the interest of justice.[6]

To the extent that the State Court Petition intended to include the Debtor, a "Notice of Suggestion of Bankruptcy" was immediately filed in the State Court Case by Debtor's counsel. The Debtor also promptly amended his Schedule E/F to include the Plaintiffs' litigation claim [ECF No. 80, filed on March 10, 2025].

On March 21, 2025, Eber Aguilera ("Aguilera") initiated an adversary proceeding against the Debtor, which is currently pending before this Court as Adv. Proceeding No. 24-35874 (the "Adversary Proceeding"). As set more fully therein, Mr. Aguilera has objected to the discharge of the State Court Claims. The Debtor intends to defend itself in the Adversary Proceeding, and believes that it has a high likelihood of success. Moreover, the Debtor has scheduled the Plaintiffs' State Court Claims as a general unsecured claim, and has designated such claim as both "unliquidated" and "disputed." [ECF No. 80, at Part 3.6]. Moreover, as of the time of the filing of the Plan, Aguilera has not sought the allowance of a late filed claim. Aguilera, therefore, is not currently entitled to vote on the Plan.

The Adversary Proceeding outcome is unknown; however, the Debtor anticipates one of three outcomes if Aguilar prevails:

First, the Debtor's insurer carrier could choose to defend the State Court Claims and reach a settlement with Aguilera. Such settlement would likely result in a release of the State Court Claims against Debtor. If the State Court Claims are released pursuant to a settlement with the Debtor's insurer, Aguilera's success in the Adversary Proceeding would have no effect on the Debtor's ability to perform the Plan.

Second, the Debtor prevails on the State Court Claims, which would not affect the Debtor's ability to perform the Plan.

Third, Aguilera prevails on the State Court Claims, which would likely impair the Debtors ability to carry out the Plan. More specifically, the Debtor would be unable to immediately pay a large judgement on the State Court Claims, and, depending on the collection efforts employed by Aguilar, could result in the Debtor defaulting under the Plan.

Pursuant to this Plan, and as otherwise communicated through their counsel, Plaintiffs are invited to file an "Agreed Motion to Allow a Late-Filed Claim," to the extent that they wish to file a proof of claim in this Case.[7] To the extent that Aguilera pursues and ultimately files a proof of claim in this Case, then such claim, once liquidated, will be treated with similarly-situated creditors in Class 6-2.

---

[6] The Plaintiffs have since amended their original State Court Petition, and omitted this "Misnomer/Alter Ego" clause.

[7] The Debtor reserves the right to request that the Court determine the amount of Plaintiffs' Allowed Claim.

### C.    Marcus Barnett's Personal Injury Claim

On or around May 1, 2025, Debtor's counsel was approached by counsel for an additional creditor, Marcus Barnett.  The Debtor had previously scheduled Mr. Barnett's litigation claim as "contingent", "unliquidated", and "disputed."  As such, Mr. Barnett's claim was not previously deemed "allowed."[8]  Through conversations between counsel, Mr. Barnett was invited to file an "Agreed Motion to Allow a Late-File Claim" to the extent that he wished to file a proof of claim in this Case.   On May 6, 2025, Mr. Barnett proceeded filed his *Agreed Motion for Leave to File Proof of Claim* [ECF No. 103], which the Court granted on May 7, 2025 [Order, at ECF No. 104].

Mr. Barnett has since filed his proof of claim in this Case for his personal injury claim, which sets forth a claim amount of $250,000.00. [*See* Claim No. 18-1].  Accordingly, Mr. Barnett's claim is now deemed "allowed."  Pursuant to this Plan, the Debtor has added Mr. Barnett's Claim to Class 6-2.[9]

## 2.6    Liquidation Analysis

To confirm this Plan, the Court must find that all holders of Allowed Claims who do not accept this Plan will receive at least as much under the Plan as such holders would receive in a Chapter 7 liquidation.  A Liquidation Analysis is attached hereto as **Exhibit A**.

The Liquidation Analysis reveals that in a hypothetical Chapter 7, JumpStar's general unsecured creditors would not receive a distribution.  This Plan proposes to pay holders of Allowed Unsecured Claims from its projected disposable income as set forth in the projected financial information attached hereto as **Exhibit B.**[10]

Because the amount that creditors would receive in a Chapter 7 liquidation is less than what they will receive under this Plan, the best interest of creditors test set forth in Section 1129(a)(7) of the Bankruptcy Code is satisfied.

## 2.7    Feasibility/Projections

Debtor must show that it will have enough cash over the life of the Plan to make required Plan payments and operate the Debtor's business.  The Debtor has provided projected financial information as **Exhibit B.**  The financial projections are based on historical data, current

---

[8] *See* Schedule E/F, at ECF. No. 43 (Scheduled at Part 3.9); *see also* Amended Scheduled E/F, at ECF No. 88 (Scheduled at Part. 3.17).

[9] As an impaired creditor in Class 6-2, a copy of the relevant pleadings — including a copy of this Plan and a ballot — will be mailed and email to Mr. Barnett, as indicated in the certificate of service (to be filed on the docket).  *See also* Exhibit C (Mr. Barnett's claim has been added).

[10] As shown under the projections, the priority tax claims will be paid in full on the Effective Date, and the Allowed Administrative Expense Claims will be paid disposable income equaling $8,000.00 per month until paid.  After the Administrative Expense Claims are paid in full, the Allowed Unsecured Creditors will receive a distribution of the disposable income projected to be $8,000.00 per month.

performance, and management's experience.

Based on the projections, the Debtor expects to have sufficient future income to perform under the Plan. Accordingly, this Plan satisfies the "feasibility" requirements under Section 1129(a)(11) of the Bankruptcy Code. Additionally, the Debtor's disposable income, as that term is defined by Section 1191(d) of the Bankruptcy Code, over the period described in Section 1191(c)(2) of the Bankruptcy Code, will be committed to the payment of Allowed Claims.

**2.8     Avoidable Transfers**

The Debtor has not yet completed its investigation with regard to prepetition transactions. The Debtor anticipates completing its investigation within 60 days after the Effective Date. If you received payment or other transfer of property that is fraudulent, preferential, or otherwise avoidable under the Bankruptcy Code, the Debtor may seek to avoid such transfer.

## III.     <u>SUMMARY OF PLAN</u>

This Chapter 11 Case was commenced under Subchapter V of the Bankruptcy Code. Subchapter V enables small business debtors such as the Debtor to more effectively reorganize in Chapter 11.

Under this Plan, the Debtor intends to distribute cash generated from its operations to holders of Allowed Claims. This Plan provides for the treatment of claims and interests as follows, and as more fully described herein:

- Five classes of Secured Claims: **<u>Class 1</u>** – Citizen's Bank; **<u>Class 2</u>** – Equity Financial; **<u>Class 3</u>** – Kubota; **<u>Class 4</u>** – SBA; and **<u>Class 5</u>** – C.H. Brown, which will be paid in accordance with existing agreement(s) between the Debtor and the Secured Creditor until paid in full.
- Two classes of Unsecured Claims, which consist of (i) **<u>Class 6-1</u>** - Unsecured Litigation Claim of Kenny Roswurm, which shall be fully satisfied by the assignment of claims against the Debtor's insurers for wrongful denial of the Debtor's insurance claim related to the Roswurm Litigation; and (ii) **<u>Class 6.2</u>** - General Allowed Unsecured Claims, which shall receive pro rata distributions from payments made by the Debtor to the unsecured creditor's pool from the Debtor's disposable income.
- Equity Interest: **<u>Class 7</u>** – Kathleen Tyson, the Debtor's sole equity interest holder, will retain her ownership interests in the Debtor.
- Five Priority (Ad Valorem) Tax Claims, which will be paid in full on the Effective Date.

**All holders of Claims should refer to Articles IV and V of this Plan for information regarding the precise treatment of their claims.**

In addition, the Debtor anticipates that it will owe the following Administrative Expense

Claims (subject to allowance by the Court), which will be paid in full upon the later of the Effective Date or Court approval, or under such other terms as agreed to by the holder of the Allowed Administrative Expense Claim:

- Kean Miller LLP, attorney for the Debtor, in the estimated amount of **$200,000** (estimated total fees);
- Drew McNanigle, Subchapter V Trustee, in the estimated amount of **$5,000**.[11]

**ALL CLAIMS FOR ADMINISTRATIVE EXPENSES MUST BE NOTICED FOR HEARING AND ARE SUBJECT TO REVIEW AND APPROVAL BY THE BANKRUPTCY COURT.**

The last day to file an application for allowance of an Administrative Expense Claim is the twenty-eighth (28th) calendar day after the Effective Date. Any application for allowance of an Administrative Claim that is not timely filed shall be deemed waived and barred as a Claim against the Debtor.

**IV.    TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS
AND PRIORITY TAX CLAIMS**

Under Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and priority tax claims are not in classes. The administrative expense claimants and priority tax claimants are not entitled to vote on the Plan.

**4.1    Administrative Expense Claims**

| Administrative Expense Claimant | Treatment of Administrative Expense Claim |
|---|---|
| **Kean Miller LLP, Counsel for the Debtor** | The Debtor estimates that the estimated administrative expense claim of Kean Miller LLP will be $200,000.00. This claim will be paid in full on the later of the Effective Date or Court approval, or under such other terms as may be agreed upon by Kean Miller LLP and the Debtor.

As set forth in the projection attached as **Exhibit B, by agreement,** this claim will be paid |

---

[11] Pursuant to Court Order [ECF No. 4, at ¶ 7], the Subchapter V Trustee is paid $1,000 per month; the calculation of the estimated amount of $5,000 assumes that the Chapter 11 Case will be confirmed within 5 months.

| Administrative Expense Claimant | Treatment of Administrative Expense Claim |
|---|---|
| | out of the Debtor's monthly disposable income until paid in full. For avoidance of doubt, this claim will be paid in full before the Allowed Unsecured Claims receive any distribution under the Plan. |
| **Drew McNanigle, Subchapter V Trustee** | The Debtor estimates that the administrative expense claim of Drew McNanigle will be $7,000.00. This claim will be paid in full on the later of the Effective Date or Court approval, or under such other terms as may be agreed upon by the Subchapter V Trustee and the Debtor.[12]<br><br>**As set forth in the projections attached as Exhibit B,** by agreement and Court Order, this claim will be paid out of the Debtor's monthly disposable income until paid in full. For avoidance of doubt, this claim will be paid in full before Allowed Unsecured Claims receive any distribution under the Plan. |

**4.2    Priority Tax Claims**

Notwithstanding anything in this Plan or in the Confirmation Order to the contrary, the following provisions apply to all Priority Tax Claims under 4.2 of this Plan.

Priority Tax Claims are also Secured Claims under 11 U.S.C. § 506 and are entitled to first priority as provided under applicable non-bankruptcy law. Any and all ad valorem tax liens securing prepetition and postpetition taxes shall be retained until all such taxes are paid in full. Debtor shall keep current all postpetition ad valorem tax liabilities (2025 and subsequent years) in the ordinary course, prior to delinquency, with any default subject to applicable nonbankruptcy law, including immediate collection actions in state court, without further notice of order from the

---

[12] Pursuant to Court Order [ECF No. 4, at ¶ 7], the Subchapter V Trustee is paid $1,000.00 per month; the calculation of the estimated amount of $7,000.00 assumes that the Chapter 11 Case will take 7 months.

Bankruptcy Court. No administrative expense claim or a request for payment is required for payment of any postpetition taxes.

| | Priority Tax Claimant | Treatment of Priority Tax Claim |
|---|---|---|
| 1. | Harris County, et al. | This claim is for unpaid ad valorem taxes in the amount of $1,297.30.  This claim will be paid in full on the Effective Date with 12% interest accruing from the Petition Date through the date the claim is paid in full. |
| 2. | Lone Star College System | This claim is for unpaid ad valorem taxes in the amount of $212.55.  This claim will be paid in full on the Effective Date with 12% interest accruing from the Petition Date through the date the claim is paid in full. |
| 3. | Harris County ESD #29 | This claim is for unpaid ad valorem taxes in the amount of $197.37. This claim will be paid in full on the Effective Date with 12% interest accruing from the Petition Date through the date the claim is paid in full. |
| 4. | Harris County ESD #11 | This claim is for unpaid ad valorem taxes in the amount of $74.49.  This claim will be paid in full on the Effective Date with 12% interest accruing from the Petition Date through the date the claim is paid in full. |
| 5. | Cypress Fairbanks ISD | This claim is for unpaid ad valorem taxes in the amount of $3,935.16.  This claim will be paid in full on the Effective Date with 12% interest accruing from the Petition Date through the date the claim is paid in full. |
| 7. | Texas Workforce Commission ("TWC") | This claim is for unpaid unemployment taxes in the amount of $1,999.74.  The TWC filed a Proof of Claim in the Case as Claims Register 17.  This claim will be paid in full on the Effective Date with 8.5% interest accruing from the Petition Date through the date the claim is paid in full. |

| | Priority Tax Claimant | Treatment of Priority Tax Claim |
|---|---|---|
| | **TOTAL** | **$7,716.61**[13] |

## V.      CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

The Plan places claims and equity interests in various classes and describes the treatment of each class as set forth below.  The Plan also states whether each class of claims or equity interests is impaired or unimpaired.  A claim or equity interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the claimants or equity holders are otherwise entitled.  If the Plan is confirmed, each creditor's and equity holder's recovery is limited to the amount provided in the Plan.

Only creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only creditors holding Allowed Claims may vote.  A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan.  Also, a class of equity interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed equity interest holders that actually vote, vote in favor of the Plan.  A class that is not impaired is deemed to accept the Plan.

The claims and equity interests shall be treated as follows under the Plan:

### 5.1      Secured Claims – Classes 1 through 5:

| Class #/Claimant | Impairment | Description and Treatment |
|---|---|---|
| **Class 1 – Citizen's Bank** | No | Citizen's Bank has a Secured Claim.  This claim is secured by one 2015 Freightliner Cascadia, and one 2016 Freightliner Cascadia. The Secured Claim amount is approximately **$80,000.00.**<br><br>This claim will be paid in accordance with the existing loan documents and/or other agreements between Debtor and Citizen's Bank until paid in full. The monthly payment will be $2,235.96.   The monthly payments will begin on the 1st of the month following the Effective Date.<br><br>Citizen's Bank will retain its liens on the collateral securing its claim until paid in full.<br><br>Citizen's Bank's claim is unimpaired and deemed to accept the Plan, and is not entitled to vote on the Plan. |

---

[13] To the extent that any additional ad valorem claims, which are filed on or before the Government Bar Date (i.e., on or before June 16, 2025), then such priority tax claims shall be paid in full when allowed.

| Class #/Claimant | Impairment | Description and Treatment |
|---|---|---|
| | | |
| **Class 2 – Equity Financial** | No | Equity Financial has a Secured Claim.  This claim is secured by two Freightliner Cascadia 125 Heavy Duty Tandem Axel Truck Tractors. The Secured Claim amount is **$5,470.47**.  Equity Financial filed a Proof of Claim in the Case as Claims Register #14.<br><br>This claim will be paid in accordance with the existing loan documents and/or other agreements between Debtor and Equity Financial until paid in full.  The monthly payment will be $1,699.00.  The monthly payments will begin on the 1st of the month following the Effective Date.<br><br>Equity Financial will retain its liens on the collateral securing its claim until paid in full.<br><br>Equity Financial's claim is unimpaired and deemed to accept the Plan, and is not entitled to vote on the Plan. |
| **Class 3 – Kubota** | No | Kubota has a Secured Claim. This claim is secured by a Kubota CTL 15" Rub; a Land Pride Bucket; and Land Pride Pallet Forks. The secured claim amount is **$76,330.36.**  Kubota filed a Proof of Claim in the Case as Claims Register #13.<br><br>This claim will be paid in accordance with the existing loan documents and/or other agreements between Debtor and Kubota until paid in full.  The monthly payment will be $1,200.00.  The monthly payments will begin on the 1st of the month following the Effective Date.<br><br>Kubota will retain its liens on the collateral securing its claim until paid in full.<br><br>Kubota's Secured Claim is unimpaired and deemed to accept the Plan, and is not entitled to vote on the Plan. |
| **Class 4 – SBA** | No | The SBA has a Secured Claim.  This claim is secured by substantially all of the Debtor's assets, including, |

| **Class #/Claimant** | **Impairment** | **Description and Treatment** |
|---|---|---|
| | | without limitation, the Debtor's accounts receivable and cash collateral. The secured claim amount is **$546,682.20**, minus payments received during the Chapter 11 Case.<br><br>This claim will be paid in accordance with existing loan documents and/or other agreements between Debtor and SBA until paid in full. The monthly payment will be $2,575.00. The monthly payments will begin on the 1st of the month following the Effective Date.<br><br>The SBA will retain its liens on the collateral securing its claim until paid in full.<br><br>The SBA's claim is unimpaired and deemed to accept the Plan, and is not entitled to vote on the Plan. |
| **Class 5** – C.H. Brown | No | C.H. Brown has a Secured Claim. This claim is secured by a 2016 Pratt 40x96 container chassis, and a 2007 Dionbilt 40x96 container chassis. The secured claim amount is **$6,586.14**. C.H. Brown filed a Proof of Claim in the Case as Claims Register #12.<br><br>This claim will be paid in accordance with existing loan documents and/or other agreements between Debtor and C.H. Brown until paid in full. The monthly payment will be $885.00. The monthly payments will begin on the 1st of the month following the Effective Date.<br><br>C.H. Brown will retain its liens on the collateral securing its claim until paid in full.<br><br>CH Brown's claim is unimpaired and deemed to accept the Plan, and is not entitled to vote on the Plan. |

**5.2     Unsecured Claims – Classes 6-1 and 6-2**

| Class #/Claimant | Impairment | Description and Treatment |
|---|---|---|
| **Class 6-1 – Litigation Claim of Kenny Roswurm** | Yes | This unsecured claim relates to the claims asserted against the Debtor in the Roswurm Litigation.  This claim will be satisfied via an assignment of the Debtor's claims against its insurers for, among other things, wrongful denial of the Debtor's insurance claims submitted to its insurers in relation to the Roswurm Litigation.<br><br>The Roswurm claim is impaired, and is entitled to vote on the Plan. |
| **Class 6-2 – General Allowed Unsecured Claims** | Yes | These unsecured claims relate to the holders of Allowed Unsecured Claims.  A list of the general unsecured creditors and their Claims is attached hereto as **Exhibit C.**  Only the Allowed Unsecured Claims shall receive distributions under this Plan.[14]<br><br>These claimants will receive a *pro rata* share of a portion of the Debtors projected disposable income as set forth on the projections attached as **Exhibit B.**  These payments will be made directly by the Debtor as disbursing agent.<br><br>General unsecured claims are impaired, and their holders are entitled to vote on the Plan. |

**5.3    Equity Interest – Class 7**

| Class #/Claimant | Impairment | Description and Treatment |
|---|---|---|
| **Class 7 – Equity Holder (Kathleen Tyson)** | No | Kathleen Tyson is the sole member of the Debtor and will retain her equity interests in the Debtor. Ms. Tyson's interest is unimpaired and deemed to accept the Plan, and is not entitled to vote on the Plan. |

**5.4    Voting Procedures** – Classes 6-1 and 6-2 (General Unsecured Claimants) are impaired as defined by Section 1124 of the Code. The Debtor is seeking the acceptance of the Plan by

---

[14] For the avoidance of any doubt, the Debtor does not dispute the claim of Jamal Deandre Sanders as set forth in his Proof of Claim [Claim No. 16-1].  Accordingly, such claim is allowed, as filed, for all purposes related to the Plan, including, without limitation, voting and receiving distributions under the Plan.

Claimants in Class 6-1 and 6-2. Each holder of an Allowed Claim in Class 6-1 and 6-2 may vote on the Plan by completing, dating, and signing the ballot sent to the holder, and returning it to the Debtor's counsel as set forth below:

- The ballot must be returned to Lloyd A. Lim, Kean Miller LLP, 711 Louisiana St., Suite 1800, Houston, Texas 7002 or via email at Lloyd.Lim@Keanmiller.com. In order to be counted, ballots must be RECEIVED no later than at the time and on the date stated on the ballot.

## VI.   ALLOWANCE AND DISALLOWANCE OF CLAIMS

**6.1    Delay of Distribution on Disputed Claim/Escrow** – No distribution will be made on account of a Disputed Claim unless such claim is allowed by a final order of the Court.  Any amounts to be distributed on the account of a Disputed Claim shall be placed in escrow pending allowance or disallowance by the Court.

**6.2    Settlement of Disputed Claims** – The Debtor will have the power and authority to settle and compromise a Disputed Claim with Court approval and in compliance with Rule 9019 of the Bankruptcy Rules.

**6.3    Treatment Once Allowed** – If a Disputed Claim is Allowed in accordance with this Plan, it shall receive treatment in accordance with the classes set forth in Article V above.  In the event that a Disputed Claim or portion of a Disputed Claim is not Allowed, the escrowed funds allocated to that Disputed Claim or portion of the Disputed Claim that is disallowed shall be distributed *pro rata* among Allowed General Unsecured Claims.

## VII.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

All the executory contracts and unexpired leases listed on the Debtor's Schedule G [ECF No. 44] shall be assumed by the Debtor upon Confirmation.  Additionally, all other executory contracts the Debtor is a party to are being rejected upon Confirmation.

Based on the Debtor's books and records, there are no defaults on the executory contracts it intends to assume.  **If any party objects to the assumption of its unexpired lease or executory contract, it must file and serve its objection to the assumption within the deadline for objecting to Confirmation.**

## VIII.   MEANS FOR IMPLEMENTATION OF THIS PLAN

The Debtor, as the reorganized Debtor, will continue to operate its business and is authorized to take any actions it deems necessary to operate same.  The Plan will be funded from the Debtor's disposable income earned from the Debtor's operations.  To date, the Debtor has filed monthly operating reports for December 2024 [ECF No. 62] and January 2025 [ECF No. 74].

The Debtor bases its projected disposable income (*see* **Exhibit B**) on historical data, current

performance, and the management's experience. As shown on **Exhibit B, t**he Debtor's total anticipated revenue from April 2025 through March 2028 exceeds its projected costs and expenses generating a projected disposable income, which disposable income as projected will be used to fund the Plan.

The Debtor shall serve as the disbursing agent under this Plan, whether the Plan is confirmed under Section 1191(a) (consensual confirmation) or Section 1191(b) (non-consensual confirmation) of the Bankruptcy Code. The Debtor shall provide the Subchapter V Trustee and the US Trustee with semi-annual reports of all distributions made pursuant to the Plan for the preceding six months, which reports shall indicate the date, amount, and payee for each distribution. The first report shall be due on December 31, 2025.

To the extent that the Subchapter V Trustee incurs any fees and expenses post-confirmation for review of the distribution reports, he shall file a Notice of Fees and Expenses Incurred with 14-day notice to parties in interest. If there is no objection, the Debtor shall remit payment to the Subchapter V Trustee. To the extent there is an objection, the Debtor shall remit payment to the Subchapter V Trustee in whatever amount is ultimately approved by the Court.

## IX.     EFFECT OF CONFIRMATION AND RELEASES

All consideration provided pursuant to this Plan shall be in exchange for and in complete satisfaction and release of all Claims, of any nature whatsoever, against the Debtor and Reorganized Debtor and/or any property of the Debtor, Reorganized Debtor, or this bankruptcy estate. Notwithstanding the foregoing, the Debtor's obligations specifically provided for under this Plan shall not be released and will survive Confirmation. Upon Confirmation, all property of the Debtor and Reorganized Debtor, tangible and intangible, will be free and clear of all Claims, liens, charges, and any other encumbrances, except as provided in the Plan. The provisions of the Plan shall bind all Creditors of the Debtor, even if the Creditor did not accept this Plan. The rights and obligations of any entity affected under this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

## X.     DISCHARGE

If the Plan is confirmed under 11 U.S.C. § 1191(a), upon Confirmation, the Debtor will be discharged from any debt that arose before Confirmation, subject to the occurrence of the Effective Date, to the extent specified in Section 1141(d) of the Bankruptcy Code.

If the Plan is confirmed under Section 1191(b), as soon as practicable after completion by the Reorganized Debtor of all payments due under the Plan, the Court shall grant the Debtor a discharge of all debts provided in Section 1141(d)(1)(A), and all other debts allowed under Section 503 and provided for in this Plan, except for as otherwise provided in Section 1192.

## XI.     RESERVATION OF RIGHTS

Prior to the Effective Date, no provision of this Plan, nor any statement or provision

contained herein, nor the taking of any action with respect to the Plan by the Debtor shall (i) be deemed to be an admission against interest and (ii) or be deemed to be a waiver of any rights which the Debtor might have against a Creditor.  If the Effective Date does not occur, neither the Plan nor any statement contained therein may be used or relied upon in any matter in any suit, action, proceeding or controversy within or outside of this bankruptcy case.

**All claims and causes of action that are not specifically released under this Plan, including, but not limited to, claims for the avoidance and recovery of pre-petition transfers under Chapter 5 of the Bankruptcy Code, are hereby reserved to be prosecuted by the Reorganized Debtor post-Confirmation.**

## XII.   DEFAULT

This Article shall only apply if this Plan is confirmed pursuant to Section 1191(b) of the Bankruptcy Code.  Under Section 1191(c)(3)(B) of the Bankruptcy Code, if the plan is confirmed on a non-consensual basis, the Debtor is required to "provide appropriate remedies" to protect the holders of claims or interests in the event that payments are not made.

If there is any default under the Plan, a Creditor under the Plan may file a notice of default. If the default is not cured within 30 days of a notice of default being filed with the Court, the Creditor may seek any rights available to it under the Plan and under applicable law.

## XIII.   GENERAL PROVISIONS

13.1   **Retention of Jurisdiction by the Court** – The Court shall retain jurisdiction of this Case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan, including adjudicating any adversary proceedings or contested matters related to defaults under the Plan; (ii) to rule on any modification of the Plan proposed under 11 U.S.C. § 1193; (iii) to hear and allow all applications for  compensation to professionals and other Administrative Claims; (iv) to resolve all issues regarding Claims  objections, and any issues arising from the assumption/rejection of executory contracts or unexpired leases, and  (v) to adjudicate any cause of action which the Debtor may own, including preference and fraudulent transfer causes of action.

13.2   **Claims Bar Date –** Claims which are not actually filed by the Claims Bar Date will be forever barred and/or released from assertion against the Debtor, the Reorganized Debtor, or property of the estate, unless the Claim is listed on the Debtor's Schedules and is not listed as disputed, contingent, or unliquidated as to amount and as to which no objection has been filed.

13.3   **Corporate Governance** – The Reorganized Debtor shall continue to be governed in accordance with its pre-petition organizational documents.

13.4   **Distributions –** If any distribution is returned undeliverable or remains unclaimed after

18

thirty days of the distribution date, no further distributions to the applicable holder shall be made unless and until the Reorganized Debtor as distribution agent is notified in writing of such holder's then-current address, and after the distribution agent makes a reasonable attempt to contact the claim holder.  Such holders of returned and/or unclaimed distributions shall be automatically discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.  Any funds that are returned to the distribution agent or not timely presented for payment within thirty days of the issue date, shall be used by the distribution agent to make additional distributions pursuant to the terms of the Plan.

**13.5**  **Subchapter V Trustee's Services** – If this Plan is confirmed on a consensual basis, the Subchapter V trustee's services will be terminated when this Plan is substantially consummated, and Section 1194 of the Bankruptcy Code does not contemplate the Subchapter V Trustee will make the Plan distributions.

However, as provided hereinabove, even if this Plan is confirmed under Section 1191(b) of the Bankruptcy Code, the Debtor, not the Subchapter V Trustee, will be responsible for making distributions under this Plan.

**13.6**  **Consensual Confirmation** – If all applicable requirements of Section 1129(a) of the Bankruptcy Code are met except for the projected disposable income rule of Section 1129(a)(15) – which applies to individual debtors – Section 1191(a) of the Bankruptcy Code requires the Court to confirm this Plan.

**13.7**  **Non-consensual Confirmation** – Under Section 1191(b) of the Bankruptcy Code, confirmation is permitted even if the requirements of Sections 1129(8), (10) and (15) of the Bankruptcy Code are not met.  Thus, cramdown does not require that (1) all impaired classes accept the plan or (2) at least one impaired class accepts the plan.  Instead, section 1191(b) cramdown rules permit cramdown confirmation even if all impaired classes do not accept the plan.  Therefore, if all other confirmation standards are met, the Court must confirm the Plan, on the request of the Debtor, if, with respect to each impaired class that has not accepted it, the Plan (i) does not discriminate unfairly; and (ii) is fair and equitable.

**13.8**  **Post-Confirmation Automatic Stay** – If the Debtor's Plan is consensually confirmed under Section 1191(a) of the Bankruptcy Code, the bankruptcy automatic stay terminates upon Confirmation.  If the Debtor's Plan is non-consensually confirmed under Section 1191(b) of the Bankruptcy Code, the automatic stay will remain in place until such time as the case is closed.

**13.9**  **Effective Date, Substantial Consummation and Final Decree** – The Debtor shall file with the Court a notice of occurrence of the Effective Date on the Effective Date or as soon as practicable thereafter.

Once the estate has been fully administered, as provided in Bankruptcy Rule 3022, the Debtor shall file a notice of substantial consummation with the Court along with a motion to obtain a final decree to close the Case.  Alternatively, the Court may enter such a final decree on its own motion.

19

**13.10** __Applicable Law__ – Unless a rule of law or procedure is supplied by Federal law, including the Bankruptcy Code or the Bankruptcy Rules, the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**13.11** __Severability__ – If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**13.12** __Successors & Assigns__ – The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit or detriment of any heir, executor, successor or assign, officer, manager, director, agent, representative, beneficiary, or guardian, if any, of each entity.

**XIV.   <u>NOTICES</u>**

Notices to the Debtor and Reorganized Debtor may be sent by United States first class mail to:

JumpStar Enterprises LLC
12807 Haynes Road, Bldg. J
Houston, Texas 77066


With a copy by e-mail to:

Kean Miller LLP
c/o Lloyd A. Lim
711 Louisiana Street
Suite 1800
Houston, Texas 77002
Lloyd.Lim@KeanMiller.com

[*Continued to Next Page.*]

Dated: May 7, 2025

By: */s/ Kathleen Tyson*
Name: Kathleen Tyson
Title: Sole Member
Dated: April 11, 2025


SUBMITTED BY:

KEAN MILLER LLP

By: */s/ Lloyd A. Lim*
Lloyd A. Lim
Texas State Bar No. 24056871
Lloyd.Lim@keanmiller.com
Rachel T. Kubanda
Texas State Bar No. 24093258
Rachel.Kubanda@keanmiller.com
711 Louisiana Street, Suite 1800
Houston, Texas 77002
Telephone: (713) 844-3000
Telecopier: (713) 844-3030